[Civ. No. 3203.  Third Appellate District.—October 22, 1927.]

CALIFORNIA BREEDERS' SALES AND PEDIGREE COMPANY (a Corporation), Appellant, v. F. F. SHOWERS, Respondent.

Adolph M. Schwartz and John J. Coghlan for Appellant.

Barcroft & Barcroft for Respondent.

FINCH, P. J.—In the summer of 1922 D. G. Maxwell, being the owner of a herd of registered Holstein cattle, entered into an agreement with the plaintiff, by the terms of which the latter engaged to conduct an auction sale of the cattle. The agreement provided that there should be "no by-bidding, direct or indirect," and that the owner should pay a penalty of twenty-five per cent in case of proof of by-bidding. The sale was conducted August 30 and 31, 1922. The defendant purchased a bull at this sale for $1,150, of which sum he paid $385 in cash and agreed to pay the remainder of $765 on August 31, 1923, with interest at eight per cent per annum, upon the payment of which it was agreed that Maxwell would deliver to the defendant "a good and sufficient bill of sale of the said property, together with warranty of title." The contract provided that title should remain in Maxwell, or his assigns, until payment was made in full, but that the defendant "assumed all responsibility for loss or damage of said property by reason of fire or improper care thereof, or any other cause whatsoever, and hereby agrees to insure said property against loss or damage by fire or death from any cause to the full value of the same, the loss, if any, to be payable to the parties hereto, as their interests may appear." This agreement was executed on August 31, 1922, and on the same day Maxwell assigned it to the plaintiff. The defendant did not take possession of the bull, but left it in the possession of Maxwell. The defendant made at least two subsequent payments on the contract, the first of which was made in February, 1924. At the time the suit was commenced there remained due and unpaid $367.62 principal and $19.02 interest, for the amount of which the plaintiff prayed judgment. The court found all the allegations of the complaint to be true and all the denials and allegations of the answer to be untrue, except the "third and separate defense," which the court found to be true, and, based on that defense alone, judgment was entered "that plaintiff take nothing by its action against defendant." The plaintiff has appealed from the judgment. The third

separate defense to which reference has been made reads as follows:

"That another consideration for the execution of the instrument sued upon herein was the request of payee Maxwell that bid in the bull referred to therein, and the promise of said Maxwell that if defendant would bid for and nominally purchase said bull, said Maxwell would retain possession of said animal, and would sell him, and divide the profits of said sale. That pursuant to said agreement, defendant bid in said bull at an auction sale, and executed the instrument, but said Maxwell wholly failed, neglected and refused to sell said bull after taking possession thereof, and said bull died while in the possession of said Maxwell."

In support of such alleged separate defense the defendant testified: "I was in attendance at the sale and purchased a number of females, and in the course of the sale a bull . . . was sold, and the bids were not, as Mr. Maxwell thought, sufficient, . . . so he sent his manager, McDonald, over to me and asked me to bid the bull in, or to buy the bull, and the bull would be left there on the ranch under Mr. Maxwell and Mr. McDonald's supervision until he was sold. He said, in fact, they had a purchaser already lined up for the bull. I made a bid on the bull, and someone made a counter bid, . . . and I refused to go any higher, or to bid any more, and Mr. Maxwell come over . . . personally and said, 'We will agree to sell this bull and keep him here until he is sold, so that we can divide the profits, or whatever he brings above the price that you give,' and I agreed to that and bid, I think, $1,150 . . . on the bull, and he was knocked off at that price." The written agreement referred to herein was thereafter, on the same day, executed by Maxwell and the defendant.

Charles L. Hughes, sales manager of the plaintiff, testified: "On the date preceding the sale, Mr. Showers introduced to me . . . one of the directors of the Carlton College Corporation. . . . He said to me that Carlton College was in the market for some cows, that Mr. Showers was there to purchase them for that account, and told me that whatever purchases were made by Mr. Showers would be settled for by Carlton College. He asked me if arrangements could be made for a year's credit on any purchases that they made. . . . I told him that we were not in a posi-

tion to buy their note from Mr. Maxwell for the total amount of their purchase on a year's time, but that if it was agreeable to Mr. Maxwell to take their promissory note for one-third of the amount that we would take their lease contract note for the balance of the contract. . . . Mr. Maxwell was willing to do this, did subsequently. . . . Mr. Showers purchased certain females, . . . and he also purchased the bull. . . . When it came to settling for these cattle after the sale was over, Mr. Showers . . . told me that while he had purchased the females for the account of Carlton College, he had purchased the bull . . . on his own account, and told me that he expected me to extend him the same terms in payment that I had extended to Carlton College, or that Mr. Maxwell, rather, had extended to Carlton College. We took this matter up then with Mr. Maxwell, . . . and the settlement was made in that manner.'' The witness further testified that he had no notice or knowledge of any agreement or understanding between Maxwell and the defendant, as alleged in the third separate defense of the answer, until informed thereof by the defendant in the early summer of 1924. The foregoing evidence of Hughes is uncontradicted. Maxwell was not a witness at the trial, his whereabouts being then unknown.

It need not be determined whether, the contract between Maxwell and the defendant having been reduced to writing, evidence of their prior oral negotiations was admissible in evidence to vary its terms, because the judgment must be reversed on other grounds.

''The employment by a seller of any person to bid at a sale by auction, without the knowledge of the buyer, without an intention on the part of such bidder to buy, and on the part of the seller to enforce his bid, is a fraud upon the buyer, which entitles him to rescind his purchase.'' (Civ. Code, sec. 1797.)

While section 1797 is intended for the protection of purchasers at auction sales, the conduct thereby denounced constitutes a fraud upon the public. (*Dealey* v. *East San Mateo Land Co.*, 21 Cal. App. 39 [130 Pac. 1066].) It is not necessary, however, to determine the effect of such fraud as between Maxwell and the defendant. While the contract sued on is not negotiable, the evidence shows without conflict that the plaintiff took the assignment thereof at

the special instance and request of the defendant and without notice of the fraud of the parties thereto. His conduct constituted an implied representation that his apparent purchase of the bull was a *bona fide* transaction. (*Irrigated Valleys L. Co.* v. *Altman,* 57 Cal. App. 413, 428 [207 Pac. 401].) The transaction with the plaintiff constituted, in effect, a loan by the plaintiff to the defendant of the balance due Maxwell upon the purchase price of the bull. This fact alone is sufficient to overcome the affirmative defense upon which the judgment is based. But further, the defendant having himself induced the plaintiff to make the purchase, he is estopped from denying the validity thereof or setting up his own fraud as a defense to an action thereon. (Code Civ. Proc., sec. 1962, subd. 3; Civ. Code, sec. 1710, subd. 3; 10 Cal. Jur. 631; 21 C. J. 1150.)

The plaintiff did not plead an estoppel, but, under the circumstances proved, such a plea was unnecessary. "Under our system of pleading the affirmative allegations of the answer are deemed denied, and all affirmative matters by way of replication are deemed to have been pleaded by the plaintiff." (*Hale* v. *Gardiner,* 186 Cal. 661, 664 [200 Pac. 598, 600]; *Wenban Estate, Inc.,* v. *Hewlett,* 193 Cal. 675, 703 [227 Pac. 723].)

The only inference to be drawn from the evidence is that, when the defendant asked the plaintiff to extend him credit on the same terms as had been agreed upon with Carlton College, he intentionally suppressed the fact of his fraudulent understanding with Maxwell, because he must have known that such credit would have been refused if he had communicated that fact to the plaintiff, and it is a reasonable inference that the plaintiff would not have given such credit with knowledge of that fact.

Pursuant to the provisions of article VI, section 4¾, of the constitution and section 956a of the Code of Civil Procedure, in addition to the facts found by the trial court, this court hereby makes the following findings of fact:

That, at the special instance and request of the defendant, and for a valuable consideration, the plaintiff purchased the contract described in the complaint and all of said Maxwell's rights and interest therein and thereunder; that at the time of such purchase the defendant had full knowledge of the secret agreement between himself and

Maxwell alleged in the third separate defense set up in the answer, but that the plaintiff had no notice or knowledge thereof; that, for the purpose of misleading the plaintiff and inducing it to make such purchase, the defendant represented to the plaintiff that he had purchased the bull referred to in such third separate defense and intentionally suppressed and omitted to communicate to the plaintiff any information of or concerning such secret agreement; that the plaintiff believed and relied on said representation and was misled thereby and by such suppression and omission and was thereby induced to and did make such purchase, which it would not have made but for such suppression and omission.

As conclusions of law from the foregoing facts, together with the facts found by the trial court, it is hereby found:

That the defendant is estopped from denying the validity of the contract described in the complaint or his obligation to make payment to the plaintiff of the balance due thereon in accordance with the terms thereof; that the plaintiff is entitled to judgment against the defendant in the amount prayed for in the complaint.

The judgment is reversed and the trial court is hereby directed to enter judgment in favor of the plaintiff against the defendant for the amount prayed for in the complaint.

Weyand, J., *pro tem.*, and Plummer, J., concurred.